# K. T. TRANSPORT, INC. v. DEPARTMENT OF TRANSPORTATION

## Case No. 87-4419

State of Florida, Division of Administrative Hearings

February 9, 1988

### APPEARANCES OF COUNSEL

**M. Craig Massey** for petitioner.

**Judy Rice,** Department of Transportation, for respondent.

### OPINION OF THE COURT

K. N. AYERS, Hearing Officer.

### *RECOMMENDED ORDER*

A public hearing was held in the above-styled case by K. N. Ayers, duly designated Hearing Officer, Division of Administrative Hearings, on December 17, 1987, at Lakeland, Florida.

By letter dated May 29, 1987, the Department of Transportation (DOT), Respondent, denied the application of K.T. Transport (KTT), Petitioner, for certification as a minority business enterprise. As grounds therefor, it is alleged Petitioner does not meet the requirements of Rule 14-78.05(3)(c), *Florida Administrative Code,* in that KTT does not have sufficient business independent to meet those requirements. A petition to contest this determination was timely filed, and this hearing followed.

At the trial, Petitioner called two witnesses, Respondent called one witness, and eleven exhibits were admitted into evidence. Proposed findings have been submitted by the parties. Treatment accorded those proposed findings is contained in the Appendix attached hereto and made a part hereof.

## FINDINGS OF FACT

1. KTT was incorporated in January, 1987, with F. Kay McDougald owning 90 percent of the issued stock and her daughter, Tracy McDougald, owning 10 percent of the issued stock. F. Kay McDougald is president, treasurer, and one director of the Corporation, and Tracy McDougald is secretary and the second of two directors. Paid in capital was $500.

2. At the time KTT was incorporated, F. Kay McDougald held one-third of the outstanding stock in Florida Transport Services (FTS) with the balance of the shares held by her husband.

3. The land upon which FTS has its offices and keeps its equipment is owned by the McDougalds jointly. FTS pays monthly rent to the McDougalds. Upon the incorporation of KTT, the latter shared the space with FTS and paid monthly rent to the McDougalds.

4. Since the incorporation of FTS, circa 1974, F. Kay McDougald has worked in the company with her husband. She has generally functioned as office manager, bookkeeper and in charge of all clerical-type functions. In addition, she performed operational functions by dispatching vehicles and making any and all operational decisions during the absence of her husband. By experience, she is fully qualified to operate KTT as an independent business.

5. Since becoming incorporated, KTT has purchased one tractor-trailer, and has obtained lease operator agreements with the owner-drivers of eight vehicles, of which three are miniwheelers, four are tractor trailers, and one a tandem truck. All of these vehicles are capable of, and are used primarily for, hauling road aggregates. In continuing operations during 1987 to date of hearing, the net worth of

KTT has increased to approximately $20,000. As a subchapter S corporation, the income of KTT is taxable to the owners.

6. FTS also operates vehicles used in hauling road aggregates; however, most of FTS equipment is tractor trailers. Since KTT began operations, FTS has leased equipment to and from KTT.

7. Due to many years working closely with competitors Mac Asphalt Company and Trans Phos, FTS and Kay McDougald developed a cooperative relationship with those companies, and KTT has been able to lease equipment from those companies when needed.

8. No evidence was presented that Mr. McDougald exercises any control over, or has any interest in, the operation of KTT other than a spousal interest in his wife succeeding in the business.

9. Some three years ago two or more contractors approached Mrs. McDougald to suggest that she form a corporation, obtain minority business certification, and bid to subcontract on DOT road building contracts for the hauling of road aggregates. After considering the concept for about two years, Mrs. McDougald formed KTT and initiated the application for certification here being considered.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties to, and the subject matter of, these proceedings.

In denying certification, DOT relies on Rule 14-78.005(c), *Florida Administrative Code,* which provides:

(c) To be certified under this rule chapter, a DBE shall be an independent business entity. The ownership and control exercised by socially and economically disadvantaged individuals shall be real, substantial, and continuing, and shall go beyond mere pro forma ownership of the firm, as reflected in its ownership documents. . . . In assessing business independence, the Department shall consider all relevant factors, including the date the firm was established, the adequacy of its resources, and the degree to which financial relationships, equipment leasing, and other business relationships with non-DBE firms vary from industry practice.

DOT contends that Mrs. McDougald's position with FTS is such that KTT may be unduly influenced by FTS and, thereby, not have the independence required.

As a corporation, KTT is a business entity legally separate from FTS, and no evidence was presented that anyone other than Mrs. McDougald exercised control over the operations of KTT.

247

In order for DOT to obtain federal financing on road projects, 10 percent of those contracts must be awarded to disadvantaged business enterprises (DBE) and minority enterprises (MBE), which includes Women's Business Enterprises (WBE). Clearly, Mrs. McDougald qualifies as a woman to head a WBE. Since federal funds are involves, the MBE must meet federal guidelines which are contained in 49 CFR 23 et seq.. 49 CFR 23.53 establishes eligibility standards to be met in order to be certified as an MBE. Subparagraph (2) thereof provides in part:

> An eligible minority business enterprise under this part shall be an independent business. The ownership and control by minorities or women shall be real, substantial, and continuing and shall go beyond the *pro forma* ownership of the firm as reflected in its ownership documents.

> * * *

> In determining whether a potential MBE is an independent business, DOT recipients shall consider all relevant factors, including the date the business was established, the adequacy of its resources for the work of the contract, and the degree to which financial, equipment leasing, and other relationships with nonminority firms vary from industry practice.

In applying those criteria to the factors here presented, the ownership and control of KTT by Mrs. McDougald is real, substantial, and continuing. While KTT is able to lease equipment on occasion from FTS, it is also able to lease equipment from Mac Asphalt and Trans Phos. Road aggregate carriers frequently need additional equipment and obtain this equipment from other transportation companies in a similar business. No one carrier ever has all of the equipment it can possibly need for any job, and one naturally turns to one's friends in the same business when additional equipment is needed. 49 CFR 23.53(6)(b) directs special consideration be given to the following circumstances in determining eligibility under this program.

(1) Newly formed firms and firms whose ownership and/or control has changed since the date of the advertisement of the contract are closely scrutinized to determine the reasons for the timing of the formation or change in the firm.

(2) A previous and/or continuing employer-employee relationship between or among present owners is carefully reviewed to insure that the employee owner has management responsibilities and capabilities discussed in this section.

(3) Any relationship between an MBE and a business which is not

248

an MBE *which has an interest in the MBE* is carefully reviewed to determine if the interest of the non-MBE conflicts with the ownership and control requirements of this section (emphasis supplied).

Applying these criteria to the facts in this case, KTT was not newly formed to take advantage of a specific contract. While Mrs. McDougald is an employee of FTS, the evidence was uncontradicted that she has management responsibility for KTT and the experience to capably operate that enterprise. Finally, with respect to (3) above, FTS has no financial interest in KTT, and no other interest was shown which would conflict with the ownership and control of KTT by Mrs. McDougald. To assume, as DOT apparently does, that because she is married to the majority shareholder of FTS, KTT under the direction of Mrs. McDougald is not an independent enterprise, is unwarranted and may constitute discrimination based on martial status.

DOT rule 14-78.005(e), *Florida Administrative Code,* tracts the department's interpretation of the federal guidelines and provides:

(e) To be certified under this rule chapter, the DBE shall be one in which the socially and economically disadvantaged owner shall also possess the power to direct or cause the direction of the management, policies, and operations of the firm and to make day-to-day as well as major business decisions concerning the firm's management, policy and operation. The discretion of the socially and economically disadvantaged owners shall not be subject to any formal or informal restrictions (including, but not limited to, bylaw provisions, partnership agreements, trust agreements or charter requirements for cumulative voting rights or otherwise) which would vary managerial discretion customary in the industry.

In determining whether the socially and economically disadvantaged owners also possess the power to direct or cause the direction of the management, policies and operations of the firm and have the requisite decision-making authority, the Department may look to the control lodged in the owners who are not socially and economically disadvantaged individuals are disproportionately responsible for the operation of the enterprise or if there exists any requirement which prevents the socially and economically disadvantaged owners from making business decisions without concurrence of any owner or employee who is not a socially and economically disadvantaged individual, then the enterprise, for purposes of this rule chapter, is not controlled by socially and economically disadvantaged individuals and shall not be considered a DBE within the meaning of this rule chapter. Where the actual management of the enterprise is

**249**

contracted out to individuals other than the owner(s), those persons who have the ultimate power to hire and fire the managers can be considered as controlling the enterprise for the purposes of this rule chapter.

Mrs. McDougald clearly meets all of the requirements of that rule.

The anomaly of the department's position that KTT is not an independent business because Mrs. McDougald is part owner and employee of FTS can be shown by an assumption of altered facts. If, for example, Mr. McDougald died or completely retired from FTS and Mrs. McDougald acquired full ownership, under the department's position, she would then be qualified to obtain certification of FTS as an MBE, but would be unable to first qualify KTT for certification. Respondent's position that FTS and KTT are too closely associated for KTT to be independent of control by FTS or the nonminority owner of FTS, is based not only on the facts presented at the hearing, but on the potential for abuse by the non-MBE company. Where the none-MBE owner of FTS has no ownership interest in KTT, is not employed by KTT in any capacity, and his sole relationship with KTT is as the spouse of the majority stockholder of KTT, to hold that this non-MBE owner can or does exercise control over KTT is pure speculation.

While it is possible for any MBE owned and operated company which meets all of the regulatory requirements for certification by the individual controlling the operation of the MBE to be under the influence of some non-MBE Svengali-like individual who directs the activities of the MBE owner, evidence that such a situation is here present was neither presented nor intimated.

The situation here is considerably different from most of the applicants for MBE certification. In many of those applications, the husband has recently transferred the majority ownership interest to his wife in order to apply for certification as an MBE. In most of those cases, a real question of who has ultimate control of the operations of the enterprise exists since the husband is still actively engaged in the business he started some years ago. Here Mrs. McDougald started KTT, and her husband has no legal interest in the company and has no legal right to direct any part of the operations of KTT unless authorized to do so by Mrs. McDougald.

From the foregoing, it is concluded that KTT is a corporation owned and operated by a woman and hence qualified for certification as an MBE; that KTT is not controlled by FTS or anyone associated with FTS, except Mrs. McDougald; and the fact that KTT shares office facilities with FTS does not result in control over KTT by FTS or

250

require a finding that KTT is not independent as required by federal and state rules. As an owner of an undivided one-half of the real property occupied by FTS and KTT, Mrs. McDougald would have proprietary rights to allow KTT to occupy these premises. It is

RECOMMENDED that KTT be certified as a Minority Business Enterprise.

ENTERED this 9th day of February, 1988, in Tallahassee, Florida.